Matthew A. Luber, Esq. – NJ ID # 017302010
 mal@njlegal.com
Mallory M. Shumaker, Esq. – NJ ID # 437632023
 mms@njlegal.com
McOmber McOmber & Luber, P.C.
50 Lake Center Drive, Suite 400
Marlton, NJ 08053
(856) 985-9800 Phone
*Attorneys for Plaintiff, Aaron Davis*

| | |
|---|---|
| AARON DAVIS,<br><br>                                  Plaintiff,<br><br>vs.<br><br>BENIHANA, INC., JERRY SHOT, BRIAN ALAVAREZ, ABC CORPORATIONS 1-5 (fictitious names describing presently unidentified business entities); and JOHN DOES 1-5 (fictitious names describing presently unidentified individuals),<br><br>                                  Defendants. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION<br>CAMDEN COUNTY<br><br>DOCKET NO.:<br><br>Civil Action<br><br>**COMPLAINT & DEMAND FOR TRIAL BY JURY** |

Plaintiff Aaron Davis ("Plaintiff"), by way of Complaint against Defendant Benihana Inc. ("Defendant Benihana" or "Corporate Defendant"), Defendant Jerry Shot ("Defendant Shot"), and Defendant Brian Alvarez ("Defendant Alvarez") (collectively "Defendants"), alleges as follows:

## PARTIES

1. Plaintiff is an individual residing in Camden, New Jersey, and at all times relevant hereto was employed as a Second Chef at Corporate Defendant's Pennsauken, New Jersey, location.

2. Defendant Benihana is a corporation organized and existing under the laws of the State of Florida with headquarters located at 21500 Biscayne Blvd Suite 900, Aventura, Florida

1

33180. Defendant Benihana maintains locations across New Jersey, including one at 5255 Marlton Pike W, Pennsauken, NJ 08109. At all times relevant hereto, Defendant Benihana is an "employer" as defined by the Conscientious Employee Protection Act, N.J.S.A. 34:19-1 *et seq.* ("CEPA") and the New Jersey Law Against Discrimination, to N.J.S.A. § 10:5-12 et seq ("NJLAD"). Defendant Benihana directly employed Plaintiff and Individual Defendants.

3. Defendant Shot is an individual and, at all times relevant hereto, is employed as the General Manager ("GM") of Corporate Defendant's Pennsauken, New Jersey location. Upon information and belief, Defendant Shot is a resident and citizen of New Jersey. This claim is brought against Defendant Shot in his individual capacity and/or as an agent or servant of Corporate Defendant during the course of his employment.

4. Defendant Alvarez is an individual and, at all times relevant hereto, is employed as a Regional Manager of Defendant Benihana. Upon information and belief, Defendant Alvarez is a resident and citizen of New York. This claim is brought against Defendant Alvarez in his individual capacity and/or as an agent or servant of Corporate Defendant during the course of his employment.

5. At all relevant times, Defendants have been single and joint employers of Plaintiff and others similarly situated within the meaning of New Jersey State Law. In this regard, their operations are interrelated and unified, and they share common management, centralized control of labor relations, common ownership, common control, common website, common business purposes, and interrelated business goals. In addition, they jointly determine and manage the pay practices, rates of employee pay and method of payment, maintenance of employee records and personnel policies, practices, and decisions with respect to the employees.

2

6. Defendant ABC Corporations 1 through 5 are currently unidentified business entities who have acted in concert with Corporate Defendant, and/or currently unidentified business entities responsible for the creation and/or implementation of anti-discrimination, harassment, and retaliation policies of Corporate Defendant, and/or currently unidentified business entities who have liability for the damages suffered by Plaintiff under any theory advanced herein.

7. Defendants John Does 1 through 5 are currently unidentified individuals who acted in concert with Defendants and/or currently unidentified individuals responsible for the creation and/or implementation of anti-discrimination, harassment, and retaliation policies of Corporate Defendant and are currently unidentified individuals who may have liability for the damages suffered by Plaintiff under any theory advanced herein.

### FACTS COMMON TO ALL CLAIMS

8. Plaintiff repeats each allegation set forth above as if set forth fully herein at length.

9. Plaintiff initially commenced employment with Defendant Benihana in or around July 2019. Eventually, due to a lull in business, Plaintiff resigned his position with the restaurant to work as a diesel mechanic.

10. At all times relevant hereto, Plaintiff was a superior employee who excelled at his job duties. This is evidenced by Defendant Shot, the General Manager of Defendant Benihana's Pennsauken location, actively requesting Plaintiff to return to his employment as a Chef at Defendant Benihana.

11. Indeed, in or around February 2023, Defendant Shot contacted Plaintiff and repeatedly asked Plaintiff to return to Defendant Benihana.

3

12. After numerous attempts by Defendant Shot to entice Plaintiff to return tor employment at Defendant Benihana, in or around February 2023, Plaintiff agreed. Plaintiff was rehired as a Chef at Defendant Benihana's Pennsauken location.

13. In even further recognition of Plaintiff's expertise and commitment to Defendant Benihana, on or around January 24, 2024, a new chef recently hired by Defendant Shot sought guidance from Plaintiff.

14. Specifically, while discussing job duties and experiences, the new chef disclosed to Plaintiff that he was hired at a rate of $12.00 per hour, and asked Plaintiff how much Plaintiff thought he should be making.

15. Plaintiff informed his coworker that Defendant Benihana's longstanding starting pay rate for new employees in that position is to pay the New Jersey minimum wage, which is $15.30 per hour, and his coworker should be earning the same.

16. Notably, New Jersey law protects the rights of employees to discuss compensation, and explicitly prohibits employers from taking any reprisals against employees for the same. N.J.S.A 10:5-12(r) (providing it is an unlawful employment practice "for any employer to take reprisals against any employee for … discussing with, or disclosing to, any other employee … of the employer … rate of compensation[.]").

17. Following his conversation with Plaintiff, the new chef then discussed his pay rate with Defendant Shot, and upon information and belief, informed Defendant Shot that he was aware of the standard payrate being between $14.00 to $15.00 per hour, at least $2 more per hour than the rate at which he was hired.

18. Upon learning that employees of Defendant Benihana were discussing their pay rates, Defendant Shot called a meeting with the chefs. However, the purpose of this meeting was

4

not to address the unequal pay within Corporate Defendant's workplace, but rather to reprimand his employees. Defendant Shot threatened retaliatory action against his employees, specifically claiming that discussing pay among each other is a terminable offense.

19. As further evidence of Plaintiff's character and position of leadership among his coworkers, Plaintiff responded to Defendant Shot's generalized threat of retaliation and informed Defendant Shot that he was responsible for disclosing the standard pay rate to his coworker.

20. Plaintiff further informed Defendant Shot of his reasonable, and accurate, belief that under New Jersey law, employees are lawfully permitted to discuss pay. Indeed, Plaintiff stated that it is a violation of New Jersey law for Defendant Shot to terminate employees for the same.

21. Shockingly, Defendant Shot accused Plaintiff of creating a hostile work environment. Worse, Defendant Shot again threatened Plaintiff with termination for discussing pay with his coworkers. This was patently retaliatory.

22. Plaintiff was in disbelief that Defendant Shot could accuse *Plaintiff* of creating a hostile work environment when Defendant Shot was offering lower wages to some of the chefs and actively retaliating against employees for discussing the same.

23. Plaintiff again informed Defendant Shot of his reasonable belief that terminating Plaintiff's employment, merely for discussing pay with a coworker, was unlawful. N.J.S.A 10:5-12(r).

24. Rather than address Plaintiff's reasonable, and accurate, belief that employees are lawfully permitted to discuss compensation, Defendant Shot instead called Defendant Alvarez, a corporate manager of Defendant Benihana. Defendant Alvarez informed Plaintiff and his

5

coworkers that they should "try to avoid" discussing pay, as it can cause a hostile work environment.

25. Defendant Shot and Defendant Alvarez were clearly committed to preventing employees from exercising their right to discuss compensation. Further, the proffered justification for the same provided by both Defendant Shot and Defendant Alvarez, that employees discussing compensation created a hostile work environment, made it painstakingly clear that all levels of management within Corporate Defendants were committed to retaliating against employees for discussing their compensation in accordance with protections afforded to them under New Jersey law.

26. Unfortunately, despite Plaintiff communicating his reasonable belief that Defendant Shot was in violation of the law by attempting to prevent employees from discussing their wages and objecting to retaliating against employees for such, Defendant Shot remained steadfast in his retaliatory campaign against Plaintiff.

27. After an hour of Defendant Shot accusing Plaintiff of creating a hostile work environment and violating company policy for discussing pay with a coworker, Plaintiff refused to clock out and go home as Defendant Shot was demanding because he understood that such a demand was unlawful.

28. Despite this, Defendant Shot terminated Plaintiff's employment in direct response to Plaintiff discussing compensation with his coworker, and communicating his reasonable belief that it is unlawful to prevent or retaliate against employees from discussing the same. Even worse, Defendant Shot called the police on Plaintiff and requested that he be removed from the property because he was no longer an employee.

6

29. Plaintiff was terminated in blatant retaliation for his reasonable belief that engaging in discussions with his coworkers related to their payrate was an activity protected by law, and that Defendant Shot's attempts to prevent and retaliate for such conversations were similarly unlawful.

30. Individual Defendants were directly involved, personally, involved, and/or aided and abetted in the aforementioned unlawful conduct.

31. As a result of Defendants' unlawful conduct, Plaintiff suffered from and continues to experience significant financial harm and emotional distress.

## COUNT ONE

## RETALIATION IN VIOLATION OF NEW JERSEY CONSCIENTIOUS EMPLOYEE PROTECTION ACT ("CEPA")

32. Plaintiff repeats each and every allegation set forth above as if set forth fully herein at length.

33. CEPA's purpose, as pronounced by the New Jersey Supreme Court, "is to protect and encourage employees to report illegal or unethical workplace activities and to discourage … employers from engaging in such conduct."

34. CEPA specifically provides that:

> An employer shall not take any retaliatory action against an employee because the employee does any of the following:
>
> a. <u>Discloses</u>, or threatens to disclose <u>to a supervisor</u> or to a public body <u>an activity, policy or practice of the employer</u>, or another employer, with whom there is a business relationship, <u>that the employee reasonably believes</u>:
>
> > (1) <u>is in violation of a law, or a rule or regulation promulgated pursuant to law</u>, including any violation involving deception of, or <u>misrepresentation to</u>, any shareholder, investor, client, patient, customer, <u>employee</u>, former employee, retiree or pensioner <u>of the</u>

7

<u>employer</u> or any governmental entity, or, in the case of an employee who is a licensed or certified health care professional, reasonably believes constitutes improper quality of patient care; or

(2)  is fraudulent or criminal, including any activity, policy or practice of deception or misrepresentation which the employee reasonably believes may defraud any shareholder, investor, client, patient, customer, employee, former employee, retiree or pensioner of the employer or any governmental entity;

b.  Provides information to, or testifies before, any public body conducting an investigation, hearing or inquiry into any violation of law, or a rule or regulation promulgated pursuant to law by the employer, or another employer, with whom there is a business relationship, including any violation involving deception of, or misrepresentation to, any shareholder, investor, client, patient, customer, employee, former employee, retiree or pensioner of the employer or any governmental entity, or, in the case of an employee who is a licensed or certified health care professional, provides information to, or testifies before, any public body conducting an investigation, hearing or inquiry into the quality of patient care; or

c.  <u>Objects to</u>, or refuses to participate in <u>any activity, policy or practice which the employee reasonably believes</u>:

(1)  <u>is in violation of a law, or a rule or regulation promulgated pursuant to law</u>, including any violation involving deception of, or misrepresentation to, any shareholder, investor, client, patient, customer, employee, former employee, retiree or pensioner of the employer or any governmental entity, or, if the employee is a licensed or certified health care professional, constitutes improper quality of patient care;

(2)  is fraudulent or criminal, including any activity, policy or practice of deception or misrepresentation which the employee reasonably believes may defraud any shareholder, investor, client, patient, customer, employee, former

8

employee, retiree or pensioner of the employer or any governmental entity; or

(3) is incompatible with a clear mandate of public policy concerning the public health, safety or welfare or protection of the environment.

[N.J.S.A. 34:19-3 (emphasis added).]

35. As described at length above, throughout the course of his employment, Plaintiff complained of, objected to, and/or protested against Defendants' activity, policy, or practice of barring employees from discussing their wages and compensation and retaliating against employees for discussing wages.

36. Plaintiff reasonably believed that Defendants' practice of prohibiting employees from discussing pay with each other, as alleged herein, violated laws, rules, and/or regulations promulgated pursuant to law including but not limited to N.J.S.A 10:5-12(r), and/or was incompatible with a clear mandate of public policy concerning the public health, safety, or welfare.

37. Defendants had knowledge of Plaintiff's complaints, objections, and/or protests, and Defendants took retaliatory action against Plaintiff by discharging his employment.

38. Individual Defendants had authority to affect the terms and conditions of Plaintiff's employment, including but not limited to the "authority to hire, fire, discipline, control [Plaintiff's] wages or control [Plaintiff's] schedule[]." Herman v. Coastal Corp., 348 N.J. Super. at 28.

39. Plaintiff reasonably perceived that Individual Defendants had the power to impact Plaintiff's conditions of employment and Plaintiff's work environment.

40. Individual Defendants have direct involvement in Plaintiff's retaliation. Individual Defendants aided in conduct that caused injury to Plaintiff, Individual Defendants were generally aware of their role in the unlawful conduct, and Individual Defendants knowingly and substantially

9

assisted in the unlawful conduct.

41. Defendants are vicariously, strictly, and/or directly liable to Plaintiff for an unlawful retaliatory discharge in violation of CEPA, pursuant to N.J.S.A. 34:19-1, *et seq.*

42. As a proximate result of the aforementioned acts and omissions set forth herein, Plaintiff has sustained damages.

**WHEREFORE**, Plaintiff demand judgment in his favor and against Defendants on this Count, together with compensatory and equitable relief, all remedies available under CEPA, punitive damages, pre-and post-judgment interest, attorneys' fees and costs of suit, and for such other relief that the Court deems equitable and just.

## COUNT II

## NJLAD—RETALIATION

43. Plaintiff incorporates each and every allegation set forth above as if repeated fully herein at length.

44. Plaintiff discussed pay rates with a co-worker, which constitutes protected conduct under the NJLAD. N.J.S.A. 10:5-12(r).

45. Defendants had knowledge about Plaintiff's disclosure of pay rates to another co-worker.

46. Plaintiff was affirmatively terminated by Defendants in retaliation for engaging in protected conduct under the NJLAD. N.J.S.A. 10:5-12(r). Defendants blatantly admitted that Plaintiff was terminated for engaging in protected conduct.

47. Defendants are vicariously, strictly and/or directly liable to Plaintiff for unlawful retaliatory conduct in violation of the NJLAD pursuant to N.J.S.A. § 10:5-12(d).

48. As a proximate result of the aforementioned acts and omissions set forth herein, Plaintiff has sustained emotional and pecuniary damages.

**WHEREFORE**, Plaintiff demands judgment in his favor and against Defendants on this Count, together with compensatory and equitable relief, all remedies available under the law, punitive damages, pre-and post-judgment interest, attorneys' fees and costs of suit. More specifically, Plaintiff demands judgment against Defendants for harm suffered in violation of the NJLAD as follows:

A. Reinstatement of employment and all benefits;
B. Back pay and benefits;
C. Front pay and benefits;
D. Compensatory damages;
E. Consequential damages;
F. Reinstatement;
G. Punitive damages;
H. Prejudgment interest and enhancements to off-set negative tax consequences;
I. Any and all attorneys' fees, expenses and/or costs, including, but not limited to, court costs, expert fees and all attorneys' fees incurred by Plaintiff in the prosecution of this suit (including enhancements thereof required to off-set negative tax consequences and/or enhancements otherwise permitted under law);
J. Such other relief as may be available pursuant to the NJLAD and which the Court deems just and equitable;
K. Ordering Defendants to take appropriate corrective action to stop and prevent retaliation at the workplace;
L. Ordering Defendants to take appropriate corrective action to stop and prevent harassment at the workplace;
M. Ordering Defendants to undergo anti-discrimination training;
N. Ordering Defendants to undergo anti-retaliation training;
O. Ordering Defendants to undergo anti-harassment training;
P. Ordering Defendants to undergo workplace civility training;
Q. Ordering Defendants to undergo bystander intervention training;
R. Ordering Defendants to engage a research organization to assess the effectiveness of their anti-discrimination training;
S. Ordering Defendants to engage a research organization to assess the effectiveness of their anti-retaliation training;
T. Ordering Defendants to engage a research organization to assess the effectiveness of their anti-harassment training;
U. Ordering Defendants to engage a research organization to assess the effectiveness of their workplace civility training;

V. Ordering Defendants to engage a research organization to assess the effectiveness of their bystander intervention training;

W. Ordering Defendants to identify an appropriate professional to investigate any future complaints of discrimination;

X. Ordering Defendants to identify an appropriate professional to investigate any future complaints of harassment;

Y. Ordering Defendants to identify an appropriate professional to investigate any future complaints of retaliation; andZ.     Such other relief as may be available and which the Court deems just and equitable.

### DEMAND FOR DISCOVERY OF INSURANCE COVERAGE

Pursuant to *Rule* 4:10-2(b), demand is made that Defendants disclose to Plaintiff's attorney whether or not there are any insurance agreements or policies under which any person or firm carrying on an insurance business may be liable to satisfy part or all of the judgment which may be entered in this action or indemnify or reimburse for payments made to satisfy the judgment and provide Plaintiff's attorney with true copies of those insurance agreements or policies, including, but not limited to, any and all declaration sheets. This demand shall include and cover not only primary insurance coverage, but also any excess, catastrophe, and umbrella policies.

### DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by jury on all issues.

McOMBER McOMBER & LUBER, P.C.
*Attorneys for Plaintiff, Aaron Davis*

Dated: April 22, 2024                By: */s/ Matthew A. Luber*
                                         Matthew A. Luber, Esq.

### DESIGNATION OF TRIAL COUNSEL

Pursuant to *Rule* 4:25-4, MATTHEW A. LUBER, ESQUIRE is hereby designated as trial

counsel for Plaintiff.

## **CERTIFICATION**

Pursuant to *Rule* 4:5-1, it is hereby certified that, to the best of my knowledge, there are no other civil actions or arbitration proceedings involving this matter with respect to this matter and no other parties need to be joined at this time. I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

                                                McOMBER McOMBER & LUBER, P.C.
                                                *Attorneys for Plaintiff, Aaron Davis*

Dated: April 22, 2024                                       By: */s/ Matthew A. Luber*
                                                                     Matthew A. Luber, Esq.

Case 1:24-cv-06569-RMB-SAK   Document 1-1   Filed 05/30/24   Page 14 of 14 PageID: 22