[Docket No. 9]

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

|  |  |
|---|---|
| AARON DAVIS,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>BENIHANA, INC., JERRY SHOTT,<br>BRIAN ALVARADO, ABC<br>CORPORATIONS 1–5 (fictitious names<br>describing presently unidentified business<br>entities), and JOHN DOES 1–5 (fictitious<br>names describing presently unidentified<br>individuals),<br><br>　　　　　Defendants.[1] | Civ. No. 24-6569 (RMB-SAK)<br><br>**OPINION** |

**APPEARANCES:**

MCOMBER, MCOMBER & LUBER, P.C.
Matthew A. Luber, *Esq.*
50 Lake Center Drive
Marlton, NJ 08053

*Counsel for Plaintiff Aaron Davis*

LITTLER MENDELSON, P.C.
Jedd E. Mendelson, *Esq.*
Bilal, Haider, *Esq.*
1805 Raymond Boulevard
Newark, NJ 07102

*Counsel for Defendants Benihana, Inc., Jerry Shott, and Brian Alvarado*

---

[1]　　The Complaint's caption incorrectly named Defendants Shott and Alvarado as "Shot" and "Alvarez." The Court has amended the caption for the purposes of this Opinion.

**RENÉE MARIE BUMB, Chief United States District Judge**

## I.    INTRODUCTION

Aaron Davis ("Plaintiff") was fired from his job as a chef at Benihana for discussing wages with a coworker and for objecting to a demand by his supervisors to stop discussing wages in the workplace. He sued Benihana and his supervisors ("Defendants") in state court under New Jersey's whistleblower and anti-wage discrimination statutes. Defendants removed the case to this Court and have now moved to dismiss arguing that Plaintiff's state law claims are preempted by the National Labor Relations Act and must instead be heard by the National Labor Relations Board. The Court held oral argument and ordered supplemental briefing on the issue of whether Plaintiff's state law claims were preempted under the Supreme Court's decision in *San Diego Building Trades Council v. Garmon*, which held that when workplace activity is arguably protected or arguably prohibited under the National Labor Relations Act, courts must defer to the exclusive competence of the National Labor Relations Board to avert the danger of state interference with federal labor policy. Upon an exhaustive consideration of the issue, the Court finds that Plaintiff's claims are preempted by *Garmon* and do not fit within *Garmon*'s exception for state laws "so deeply rooted in local feeling and responsibility." For the reasons that follow, the Court will **GRANT** Defendants' Motion to Dismiss.

## II.    FACTUAL BACKGROUND

Aaron Davis was a chef at the Pennsauken, New Jersey location of Defendant Benihana, a chain of Japanese steakhouses. [Docket No. 1-1 ("Compl.") ¶¶ 9–10.] He quit, seeking a new line of work due to a lull in business. [*Id.* ¶ 9.] A few years later, Davis's former manager, Defendant Jerry Shott, asked him if he would consider returning to work at the restaurant. [*Id.* ¶ 11.] He agreed. [*Id.* ¶ 12.]

About a year into Davis's second stint at the restaurant, a newly hired chef reached out to him for advice. [*Id.* ¶ 12.] The junior chef disclosed to Davis that he was only making $12 per hour and asked Davis if he should be making more money. [*Id.* ¶ 13.] Davis responded that $12 per hour was too low and that the starting pay for new chefs at the restaurant was minimum wage which, in New Jersey, is over $15 per hour. [*Id.* ¶ 15.][2]

The newly hired chef went to Defendant Shott to discuss his payrate and his belief that he should be making $2 more per hour under New Jersey law. [*Id.* ¶ 17.] Shott then called a meeting with all of the chefs and demanded that they not discuss pay in the workplace, warning them that doing so was a terminable offense. [*Id.* ¶ 18.] Davis spoke up. He told Shott that he was the one to disclose the proper payrate to his coworker and that Shott could not lawfully terminate employees for discussing pay in the workplace.

---

[2]    Effective January 1, 2024, New Jersey raised its minimum wage by $1 to $15.13. *See* N.J.A.C 12:56-3.1(b); *New Jersey's Minimum Wage to Surpass $15 Per Hour Target Set by Gov. Murphy*, N.J. DEP'T OF LAB. & WORKFORCE DEV. (Sept. 26, 2023), https://www.nj.gov/labor/lwdhome/press/2023/20230926_minwage.shtml.

[*Id.* ¶¶ 19–20.] Shott then accused Davis of creating a hostile work environment and threatened to terminate him for discussing pay with his coworkers. [*Id.* ¶ 21.]

During or shortly after the meeting, Shott called Defendant Brian Alvarado, a Benihana regional corporate manager. [*Id.* ¶ 24.] Alvarado spoke to Davis and the other chefs and instructed them to "try to avoid" discussing pay in the workplace because it can create a hostile work environment. [*Id.*] About an hour after the meeting, Defendant Shott demanded that Davis clock out of his shift early. [*Id.* ¶ 27.] He refused. [*Id.*] Shott fired him on the spot and called the police to have Davis removed from the restaurant. [*Id.* ¶ 28.]

## III.    PROCEDURAL BACKGROUND

Davis sued Benihana, Shott, and Alvarado in the Superior Court of New Jersey. He alleged that they unlawfully retaliated against him in violation of New Jersey's Conscientious Employee Protection Act ("CEPA"), which prohibits employers from retaliating against a whistleblower-employee who objects to or refuses to participate in an activity, policy, or practice of the employer which the employee reasonably believes is unlawful. N.J.S.A. 34:19-3(a)(1). [Compl. at Count I.] He also alleged that Defendants unlawfully retaliated against him under New Jersey's Law Against Discrimination ("NJLAD"), section N.J.S.A. 10:5-12(r), which prohibits employers

from retaliating against an employee for discussing compensation with a coworker. [Compl. at Count II.][3]

Defendants removed the case to this Court based on the diversity of the parties and because, they argue, the National Labor Relations Act, 29 U.S.C. § 151, *et seq.* ("NLRA" or "Act") completely preempts Plaintiff's claims. Defendants now move to dismiss pursuant to Federal Rules 12(b)(1) and 12(b)(6). They argue that the state law claims are completely preempted under the NLRA and must be decided by the National Labor Relations Board ("NLRB" or "Board"), which has exclusive jurisdiction over activity "arguably subject" to Section 7 or Section 8 of the NLRA. *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 244–45 (1959).

## IV.    LEGAL STANDARD

The Court undertakes its review under Federal Rule of Civil Procedure 12(b)(1) governing dismissals for lack of subject matter jurisdiction rather than Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Defendants' defense of federal labor preemption—known as *Garmon* preemption for the case that originated it, *see Glacier Northwest, Inc. v. Int'l Brotherhood of Teamsters Local Union No. 174*, 598 U.S. 771, 776, (2023)—is a jurisdictional defense. *Int'l Longshoremen's Ass'n v. Davis,* 476 U.S. 380, 393 (1986) ("A claim of *Garmon* pre-emption is a claim that the state court has no power to adjudicate the subject matter of the case[.]"); *Nowak v. Major League Soccer, LLC*, 90 F.

---

[3]    *See* N.J.S.A. 10:5-12(r) (providing that it is an unlawful employment practice "for any employer to take reprisals against any employee for … discussing with, or disclosing to, any other employee … of the employer … rate of compensation[.]").

Supp. 3d 382, 386 (E.D. Pa. 2015) ("*Garmon* preemption deprives a court of the subject matter jurisdiction necessary to adjudicate [state law] claim[s].").

A party may challenge subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) through a facial attack or a factual attack. *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016). Under a facial attack, a party may not dispute the facts alleged in the complaint, and the court must accept the alleged facts as true. *Id*. Under a factual attack, a plaintiff's allegations are not entitled to a presumption of truth and the court may weigh and consider evidence outside the pleadings. *Id*. Defendants bring a facial challenge to the Court's jurisdiction arguing that Plaintiff's claims, as alleged, are completely preempted by the NLRA. *See Nowak*, 90 F. Supp. 3d at 385–86.

## V.    ANALYSIS

### A.    Federal Jurisdiction and Complete Preemption

Federal courts have original jurisdiction over disputes between citizens of different states where the amount in controversy is greater than $75,000, 28 U.S.C. § 1332, and cases "arising under the Constitution, laws, or treaties of the United States," 28 U.S.C. § 1331. For a federal court to properly have diversity jurisdiction, the parties must be "completely diverse." That means that no plaintiff can be a citizen of the same state as any defendant. *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir.

2010) (complete diversity "requires that, in cases with multiple plaintiffs or multiple defendants, no plaintiff be a citizen of the same state as any defendant").

Defendants allege that the Court has original jurisdiction over this case based on the diversity of the parties. [Notice of Removal ¶ 5 (alleging that the action is "between citizens of different states").] But the parties are not, as alleged, completely diverse. Plaintiff and Defendant Shott are both allegedly citizens of New Jersey. [Compl. ¶¶ 1, 3.] And so, because Plaintiff and Defendant Shott are both allegedly citizens of New Jersey, this Court does not have subject matter jurisdiction based on diversity of citizenship.

But Defendants also allege that this Court has federal question jurisdiction over this case. They argue that the NLRA, a federal statute, completely preempts Plaintiff's state law whistleblower and anti-wage discrimination claims, the only claims appearing on the face of Plaintiff's well-pleaded complaint. [Notice of Removal ¶¶ 11–16.]

Usually, federal question jurisdiction only attaches if a federal issue appears on the face of the plaintiff's well-pleaded complaint. *See Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 8–10 (1983). And "[t]he existence or expectation of a federal defense is insufficient to confer federal jurisdiction." *New Jersey Carpenters & the Trustees Thereof v. Tishman Const. Corp. of New Jersey*, 760 F.3d 297, 302 (3d Cir. 2014).

But a "narrow exception" to the well-pleaded complaint rule applies where Congress "has expressed its intent to 'completely pre-empt' a particular area of law such that any claim that falls within [that] area is 'necessarily federal in character.'" *In re U.S.*

*Healthcare, Inc.*, 193 F.3d 151, 160 (3d Cir. 1999) (quoting *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63–64 (1987)). The complete preemption doctrine derives from the U.S. Constitution's Supremacy Clause which overrides state laws that "interfere with, or are contrary to," federal law. *Gibbons v. Ogden*, 9 Wheat. 1, 211 (1824) (Marshall, C.J.); *Glacier Nw.*, 598 U.S. at 776 ("It is a bedrock rule, of course, that federal law preempts state law when the two conflict."). A defense of complete preemption "operates to confer original federal subject matter jurisdiction notwithstanding the absence of a federal cause of action on the face of the complaint" or a lack of complete diversity between the parties. *In re U.S. Healthcare,* 193 F.3d at 160. Therefore, a claim that is completely preempted by federal law is removable to federal court even without another independent basis for original jurisdiction. *See Verdone v. Rice & Rice, PC*, 724 F. Supp. 3d 366, 379 (D.N.J. 2024) (citing *Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 8 (2003)).

"Congressional power to legislate in the area of labor relations, of course, is long established." *Allis-Chalmers Corp. v. Lfiieueck*, 471 U.S. 202, 208 (1985); *see also NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1 (1937) (upholding constitutionality of NLRA under Congress's Commerce Clause powers). In *San Diego Building Trades Council v. Garmon*, the Supreme Court held that the States cannot regulate conduct that is arguably protected under Section 7 of the NLRA or arguably prohibited under Section 8 of the NLRA. 359 U.S. at 245. So, when activity is "arguably" subject to Section 7 or Section 8 of the NLRA, state law is completely preempted, and a federal court (or a state court)

must defer to the NLRB. *See Glacier Nw.* 598 U.S. at 776 (citing *Wisconsin Dep't. of Industry v. Gould Inc.*, 475 U.S. 282, 286 (1986)).

Practically, for purposes of this Court's jurisdiction, Defendants' removal of this action based on *Garmon* preemption means two things. *First*, if the Court agrees that Plaintiff's claims are completely preempted by *Garmon*, Defendants' removal was proper and the Court must dismiss the case for lack of subject matter jurisdiction so that it can instead be adjudicated before the NLRB, which has exclusive jurisdiction over the dispute. *Second*, if the Court finds that Plaintiff's claims are not subject to *Garmon* preemption, the Court must remand the case because there would be no other basis for the Court's original jurisdiction. The parties are not completely diverse and there are no other federal claims appearing on the face of Plaintiff's well-pleaded complaint. 28 U.S.C. § 1447 ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.").

## B.    *Garmon* Preemption Under the NLRA

Passed in 1935, the NLRA "encourag[es] the practice and procedure of collective bargaining" between labor and management to resolve "industrial disputes arising out of differences as to wages, hours, or other working conditions." 29 U.S.C. § 151. Section 7 of the NLRA protects employee rights to collectively bargain and "engage in other concerted activities for the purpose of . . . mutual aid or protection." 29 U.S.C. § 157. Section 8 of the NLRA prohibits employers from "interfer[ing] with, restrain[ing], or coerc[ing] employees in the exercise of the rights guaranteed in [Section 7]." 29 U.S.C.

§ 158(a)(1). Congress created the NLRB to enforce the NLRA. "The Board is authorized 'to prevent any person from engaging in any unfair labor practice' that 'affect[s] commerce' and [i]ts authority kicks in when a person files a charge with the agency alleging that an unfair labor practice is afoot." *Glacier Nw.*, 598 U.S. at 775 (*first* quoting 29 U.S.C. § 160, *then* citing 29 C.F.R. § 101.2) (first alteration in original).

Over sixty years ago in *San Diego Building Trades Council v. Garmon*, the Supreme Court held that when the States regulate activity that is "arguably protected" under Section 7 of the NLRA or "arguably prohibited" under Section 8 of the NLRA, "the States as well as the federal courts must defer to the exclusive competence of the [NLRB]" in order to "avert[]" "the danger of state interference with national [labor] policy." 359 U.S. at 245; *see also Voiles v. Gen. Motors Corp.*, 170 F.3d 367, 378 (3d Cir. 1999) ("*Garmon* preemption protects the exclusive jurisdiction of the NLRB over unfair labor practice proceedings."). Activity is "arguably subject" to *Garmon* preemption if "the party claiming preemption … demonstrate[s] that [its] case is one that the [NLRB] could decide in [its] favor" based on "an interpretation of the [NLRA] that is not plainly contrary to its language and that has not been 'authoritatively rejected' by the courts or the Board." *Davis*, 476 U.S. at 395. The party claiming preemption must demonstrate that the NLRA arguably protects or prohibits the conduct in question under an "interpretation of the [NLRA] that is not plainly contrary to its language and that has not been authoritatively rejected by the courts or the Board." *Id.* (internal quotation marks and citation omitted). If the court determines that "there is an arguable case for pre-emption," *id.* at 397, "it generally must grant the party's preemption defense and

10

await the Board's resolution of the legal status of the relevant conduct", *Glacier Northwest*, 598 U.S. at 777. "[O]nly if the Board decides that the conduct is not protected or prohibited [by the NLRA] may the court entertain the litigation." *Davis*, 476 U.S. at 397.

As the Supreme Court has noted, *Garmon* preemption is "unusual" in its broad sweep. *Glacier Nw.*, 598 U.S. at 776. Normally, federal law completely preempts state law only where it was the "clear and manifest purpose of Congress" to displace the States' historic police powers. *Wyeth v. Levine*, 555 U.S. 555, 565 (2009) (internal quotation marks and citation omitted). But *Garmon* preemption casts a wider net. *Garmon* provides that the NLRA preempts state labor law "even when the two only *arguably* conflict." *Glacier Nw.*, 598 U.S. at 776 (emphasis in original). So, as long as the party invoking *Garmon* preemption has "met its burden to show that 'there is an arguable case for pre-emption,' [a court] generally must grant the party's preemption defense and await the [NLRB's] resolution of the legal status of the relevant conduct." *Id.* at 777 (quoting *Davis*, 476 U.S. at 397). The *Garmon* Court reasoned that its "prophylactic rule of pre-emption," *Glacier Nw.*, 598 U.S. at 786 (Thomas, J., concurring), was necessary to effectuate Congress's intent to "entrus[t] administration of the labor policy for the Nation to a centralized administrative agency, armed with its own procedures, and equipped with its specialized knowledge and cumulative experience," *Garmon*, 359 U.S. at 242. *See Sears, Roebuck & Co. v. San Diego Cnty. Dist. Council of Carpenters*, 436 U.S. 180, 187 (1978) (explaining that *Garmon* preemption provides "general guidelines for

deciphering the unexpressed intent of Congress regarding the permissible scope of state regulation of activity touching upon labor-management relations"). "To leave the States free to regulate conduct so plainly within the central aim of federal regulation," the Court explained, would "involve[] too great a danger of conflict between power asserted by Congress and requirements imposed by state law." *Garmon*, 359 U.S. at 244.

### 1.    *Garmon*'s "Local Interest Exception"

Although *Garmon* is strong medicine to "reflect[] the basic federal concern with potential state interference with national labor policy," it does not "inflexibl[y]" or "mechanical[ly]" apply any time state law regulates the workplace. *Sears*, 436 U.S. at 188–89 (citations omitted). Carving out exceptions to its broad preemption rule, the Court in *Garmon* explained that preemption is inappropriate when a state law relates to a "merely peripheral concern of the [NLRA]" or when it "touche[s] interests so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction, [a court] could not infer that Congress had deprived the States of the power to act." *Garmon*, 359 U.S. at 243–44.[4]

*Garmon*'s latter exception—known as the "local interest" exception—is rooted in concerns of federalism. "In the scheme of our federalism," the Court in *Garmon* explained, the States' historic power to "main[tain] domestic peace" cannot be

---

[4]    Only the latter exception appears to be at issue in this case. [Docket No. 11 ("Pl.'s Br.") at 12 (arguing only that even if conduct at issue is arguably protected or prohibited by the NLRA, Plaintiff's NJPAD and CEPA claims are "so deeply rooted in local feeling and responsibility").]

"overridden in the absence of clearly expressed congressional direction." *Id.* at 247. Accordingly, the Supreme Court has been "unwilling to 'declare pre-empted all local regulation that touches or concerns in any way the complex interrelationships between employees, employers, and unions[.]'" *Farmer v. United Bhd. of Carpenters & Joiners of Am., Loc. 25*, 430 U.S. 290, 295 (1977) (quoting *Motor Coach Employees v. Lockridge*, 403 U.S. 274, 289 (1971)).

As former Solicitor General Archibald Cox once wrote, "[n]o one would suggest that, because it is an unfair labor practice for an employer to beat-up union organizers and run them out of town, the state is deprived of power to prosecute the employer, or [that] the organizers have no private right to recover damages under state law." Archibald Cox, *Recent Developments in Federal Labor Law Preemption*, 41 OHIO ST. L.J. 277, 281 (1980). In this vein, the Supreme Court's cases have not extended the local interest exception "beyond a limited number of state interests that are at the core of the States' duties and traditional concerns," including laws protecting private property, bodily security, and preservation of the public order. *New York Tel. Co. v. New York State Dep't of Lab.*, 440 U.S. 519, 550–51 (1979) (Blackmun, J., concurring); *Belknap, Inc. v. Hale*, 463 U.S. 491, 509–11 (1983) (collecting cases); *see also Hotel Emp. & Rest. Empl. Union, Local 57 v. Sage Hosp. Resources, LLC*, 390 F.3d 206, 212 n.4 (3d Cir. 2004) ("The local interest exception has ordinarily been applied where the conduct alleged concerned activity traditionally recognized to be the subject of local regulation, most often involving threats to public order such as violence, threats of violence, intimidation and destruction of property and also to cover acts of trespass." (internal quotation marks and

13

citation omitted)). These kinds of laws that maintain and regulate "domestic peace" and public order under the States' historic police powers, *Garmon*, 359 U.S. at 247, can avoid preemption through the local interest exception because they "apply to the general public or substantial segments thereof without regard to whether the individual is an employer, union, or employee concerned with unionization or a labor dispute." Archibald Cox, *Labor Law Preemption Revisited*, 85 HARV. L. REV. 1337, 1355–56 (1972).

To determine whether *Garmon*'s local interest exception applies, a court must first determine if adjudicating the state law claims would present a "risk of interference with the regulatory jurisdiction of the Labor Board." *Sears*, 436 U.S. at 196. Next, it must determine whether the state law regulates "a significant state interest" "so deeply rooted in local feeling and responsibility." *Id.* at 194–95 (quoting *Garmon*, 359 U.S. at 244). Finally, it must balance the two together, that is, any significant, deeply-rooted local interest, against any risk of interference with the NLRB's ability to adjudicate the controversy. *Belknap*, 463 U.S. at 489–99 ("[T]he state's interest in controlling or remedying the effects of the conduct [must be] balanced against [] the interference with the Board's ability to adjudicate controversies committed to it by the Act[.]"); *Loc. 926, Int'l Union of Operating Engineers, AFL-CIO v. Jones*, 460 U.S. 669, 676 (1983) ("The question of whether regulation should be allowed because of the deeply-rooted nature of the local interest involves a sensitive balancing of any harm to the regulatory scheme established by Congress."); *Pennsylvania Nurses Ass'n v. Pa. State Educ. Ass'n*, 90 F.3d 797, 803 (3d Cir. 1996) (state law must be balanced against "the risk that the exercise of state jurisdiction over the tort claim would interfere with the regulatory jurisdiction of the

14

NLRB"); *see also Pia v. URS Energy & Constr., Inc.*, 227 F. Supp. 3d 999, 1003 (S.D. Iowa 2017) (court must determine whether regulated conduct touches interests deeply rooted in local feeling and responsibility and balance that interest against risk of interference with the regulatory jurisdiction of the NLRB).

### 2.    *Sears* and the Identical Controversies Analysis

In *Sears, Roebuck & Co. v. San Diego District Council of Carpenters*, the Supreme Court refined *Garmon*'s local interest exception. Writing for the majority, Justice Stevens explained that whether state law risks interference with the NLRB's regulatory jurisdiction depends on whether state law is regulating conduct that is arguably protected by Section 7 of the NLRA or arguably prohibited by Section 8 of the NLRA. *Sears*, 436 U.S. at 189–90.

### a.    *Laws Regulating Arguably Protected Activity*

With respect to laws regulating arguably protected conduct, the animating concern of the local interest exception is that the state court will erroneously restrict conduct that is actually protected under the NLRA. *See id*. at 200. That concern is rooted in history. Congress passed the NLRA in no small part due to the hostility exhibited by some Progressive Era state (and federal) courts to union organization, federal policies concerning union organization, and collective bargaining, even though some of that activity, like picketing, was arguably protected under the First Amendment. *See* Cox, *Recent Developments in Federal Labor Law Preemption*, *supra*, at 287–88; THE DEVELOPING LABOR LAW 3–5 (Higgins, Jr. et al., eds. 8th ed. 2023); *see also* Melvin I. Urofsky, *State*

*Courts and Protective Legislation*, 72 J. AM. HIST. 63 (1985) (noting the "reactionary reputation" of Progressive Era courts). Thus, when state regulation addresses arguably protected conduct, "there is a substantive Supremacy Clause concern that the state tribunal could restrict or hamper federally protected rights" that the NLRA actually protects. *Healthcare Ass'n of New York State, Inc. v. Pataki*, 471 F.3d 87, 96 (2d. Cir. 2006); *Sears*, 436 U.S. at 203 ("To allow the exercise of state jurisdiction in certain contexts might create a significant risk of misinterpretation of federal law and the consequent prohibition of protected conduct."). The local interest exception under the arguably protected branch of *Garmon* focuses, therefore, on "the risk that the state will sanction conduct that the [NLRA] [actually] protects." *Belknap*, 463 U.S. at 498. And if the state law regulates conduct actually protected by the NLRA, "pre-emption follows not as a matter of protecting [the] jurisdiction [of the National Labor Relations Board], but as a matter of substantive right." *Brown v. Hotel & Rest. Emps. & Bartenders Int'l Union Loc. 54*, 468 U.S. 491, 503 (1984).

### b.    *Laws Regulating Arguably Prohibited Activity*

With respect to laws regulating arguably prohibited activity, the animating concern of the local interest exception is interference with the NLRB's "primary jurisdiction to enforce the statutory prohibition against unfair labor practices" under the NLRA. *Sears*, 436 U.S. at 198. The "critical inquiry" in determining whether there will be a conflict of primary jurisdiction is "whether the controversy presented to the [] court is identical to ... or different from ... that which could have been, but was not, presented to the Labor Board." *Id*. at 197. Only where the "controversy presented to the [] court

16

is identical to … that which could have been, but was not, presented to the Labor Board" is there a risk that exercising jurisdiction over the state law claim will interfere with the NLRB's congressionally mandated unfair labor practices jurisdiction. *Sears*, 436 U.S. at 197–98. Although the risk of primary jurisdiction interference is more likely when the state law relates to labor relations, generally applicable laws also may risk interference with the Board's jurisdiction, however, they are "less likely to … conflict with federal labor policy[.]" *Sears*, 436 U.S. at 197 n.27.

### c. *CEPA and NJLAD Regulate Arguably Prohibited Activity*

The parties do not dispute that the preemption concern in this case is of the latter variety—one of primary jurisdiction under the arguably prohibited branch of *Garmon*. [*See* Pl.'s Br. at 10–12; Docket No. 12 ("Defs.' Reply Br.") at 11–13.] Plaintiff brings claims under both CEPA and NJLAD, state statutes that regulate employer conduct arguably prohibited under Section 8 of the NLRA. *See Puglia v. Elk Pipeline, Inc.*, 141 A.3d 1187, 1207 (N.J. 2016) (applying primary jurisdiction rationale of *Garmon* to state whistleblower statute); *Hume v. Am. Disposal Co.*, 880 P.2d 988, 993 (Wash. 1994) (en banc)*, cert. denied*, 513 U.S. 1112 (1995) (same); *Moreno v. UtiliQuest, LLC*, 29 F.4th 567, 576 (9th Cir. 2022) (applying primary jurisdiction rationale of *Garmon* to California whistleblower and wrongful termination statutes); *Pennsylvania Nurses*, 90 F.3d at 804 (applying primary jurisdiction rationale of *Garmon* to Pennsylvania common law tort claims brought by nurses' union against competing union and labor representatives); *see also Pia*, 227 F. Supp. 3d at 1004–05 (applying primary jurisdiction rationale of *Garmon*

17

to Iowa common law and statutory wrongful termination claims). So, if Plaintiff's CEPA and NJLAD claims present "identical controversies" to an NLRA unfair labor practice charge that he could have (but did not) bring before the NLRB, there will be a risk of interference with the Board's primary jurisdiction. *Moreno*, 29 F.4th at 576 ("In determining whether adjudicating a state claim risks interference with the NLRB's jurisdiction, we inquire whether the controversy presented to the state court is identical with that which could be presented to the Board." (internal quotation marks and citation omitted)). Any risk of interference must then be balanced against any significant, deeply-rooted state interest in enforcing CEPA and NJLAD in New Jersey's courts. *See Belknap*, 463 U.S. at 489–99; *Jones*, 460 U.S. at 676; *Sears*, 436 U.S. at 197.

### d. When are the "Controversies Presented" Identical?

What does it mean that the "controversies presented" between the state law and the NLRA charge have to be identical? There are two things it cannot mean. First, it cannot mean that the NLRA charge and the state law claim must match element-for-element or remedy-for-remedy. If that were true, as the Third Circuit has recognized, "state claims would never be preempted" because "[a] Board proceeding and a state-law cause of action [are], by definition, … different claims" with different elements and different remedies. *See Pennsylvania Nurses*, 90 F.3d at 805. The Supreme Court's cases, too, have rejected that kind of rigid identity of claims. *See Jones*, 460 U.S. at 682, 684 (rejecting argument that controversies were not identical because state court could award punitive damages and fees whereas NLRB could only award backpay and explaining that controversies must only be "the same in a fundamental respect");

*Garmon*, 359 U.S. at 246 (finding it "[in]significant" that the California state law at issue provided for damages whereas the Board could only "enjoin" and "could not compensate"); *see also Pennsylvania Nurses*, 90 F.3d at 805 (rejecting plaintiff's proposed "identical controversy" test). Second, it cannot mean that any factual overlap makes the controversies presented identical. In most cases—and certainly in this case—the facts underlying both the state law causes of action and any proceeding before the NLRB will be the same. *See Sears*, 436 U.S. at 196–97 (citing *Farmer*, 430 U.S. at 305) (explaining that, in *Farmer*, even though the "the arguable federal violation and the state tort arose in the same factual setting, the respective controversies presented to the state and federal forums would not have been the same").

The key, instead, lies in comparing both the factual and legal proofs necessary to establish both an unfair labor practices charge under the NLRA and the state law cause of action. If the facts alleged in support of the state law cause of action could also support a finding that the defendant violated the NLRA, the claims are identical and there would be a risk of interference with the NLRB's primary jurisdiction. *See Jones*, 460 U.S. at 682 (holding that because liability on state law claim was also sufficient to establish an NLRA violation, there was a risk of interference with the Board's jurisdiction); *Moreno*, 29 F.4th at 576 (state law claim was identical to NLRA charge because the "facts as alleged in [the plaintiff's] complaint could [also] support a finding that [the defendant] violated the NLRA"); *Pennsylvania Nurses*, 90 F.3d at 804 (where "much of the conduct forming the basis of the state tort claims also underlies the potential unfair labor practice charges, and the same facts would need to be determined in each proceeding" there is a

19

"risk of conflicting rulings from the state court and the Board [which] threatens state interference with the NLRB's enforcement of national labor relations policy"); *see also* Cox, *Recent Developments in Federal Labor Law Preemption*, *supra* at 285 (explaining that "[t]he more widely the applicable state substantive law differs from the federal law, the greater will be the differences in the proof required to make a case for judicial relief," and thus, the more likely it is that the state law claim is not preempted by *Garmon*). Put simply, the identical claims analysis asks whether "the state-court tort action can be adjudicated without resolution of the merits of the underlying labor dispute." *Farmer*, 430 U.S. at 304 (internal quotation marks omitted).

*Sears* is a good example for this guiding inquiry. In *Sears*, an employer sued a union for trespass in California state court after the union refused to comply with the employer's demand to cease picketing on its property. 436 U.S. at 198. The California Supreme Court applied *Garmon* to preempt the employer's trespass claim holding that the union's picketing was arguably prohibited under Section 8. *Id.* at 183–84.[5] But the United States Supreme Court reversed under the local interest exception. It held that the trespass claim before the state court was not identical to the NLRA charge that could have been, but was not, presented before the NLRB. Why? Because, to determine whether there was a trespass under California law, the state court would have to determine only the location of the picketing. *Id.* at 198. But the unfair labor practice charge would have been limited to the question of "whether the picketing had a

---

[5]    It also found that the union's picketing was arguably protected under Section 7. *Id.* at 184.

recognitional or work-reassignment objective," an issue "completely unrelated to the simple question whether a trespass had occurred." *Id.* So, because determining the location of the picketing would play no part in establishing an unfair labor practice charge under Section 8 of the NLRA, there was no risk of interference with the NLRB's primary jurisdiction under the arguably prohibited branch of *Garmon*'s local interest exception. *See Sears*, 436 U.S. at 186.

With these background principles in mind, the Court now turns to Defendants' arguments in support of dismissal that the CEPA and NJLAD claims in this case are preempted under *Garmon*.

### C.  Defendants' Conduct was Arguably Prohibited Under Section 8 of the NLRA and Arguably Protected Under Section 7 of the NLRA

Plaintiff does not meaningfully contest that his employer's conduct was an unfair labor practice arguably prohibited under Section 8 of the NLRA. Nor could he in light of the Complaint's allegations. As set forth in the Complaint, Plaintiff alleges that he was terminated "in direct response to [] discussing compensation with his coworker, and communicating his reasonable belief that it [was] unlawful to prevent or retaliate against employees from discussing the same." [Compl. ¶ 28.] Retaliatory termination of an employee for disobeying and objecting to an unlawful workplace rule—here, forbidding employees from discussing wages in the workplace—is arguably (and, if established, actually) an unfair labor practice under Section 8(a)(1) of the NLRA. *See Victory II, LLC d/b/a Victory Casino Cruises II*, 363 N.L.R.B. 1578, 1580 (2016) (rules or provisions which prohibit employees from discussing wages are unlawful) (citation omitted); *Lowes*

*Home Centers, LLC & Amber Frare*, 368 N.L.R.B. No. 133, slip op. (Dec. 12, 2019), *enf'd.* 850 F. App'x 886, 890 (5th Cir. 2021) ("[T]he Board has consistently held that rules or provisions which prohibit employees from discussing wages are unlawful[.]"); *Wal-Mart Stores, Inc.*, 340 N.L.R.B. 220, 234 (2003) (employer violated Section 8(a)(1) by telling employees that they were not allowed to discuss wages and benefits and that they could be terminated for doing so); *see also NLRB v. Main St. Terrace Care Ctr.*, 218 F.3d 531, 538 (6th Cir. 2000) (fact that workplace rule restricting employee discussions on wages was promulgated orally rather than in writing did not preclude finding that rule violated Section 8(a)(1) of NLRA by interfering with employees' right to engage in protected concerted activity).

Plaintiff argues that he never engaged in "concerted activity" within the meaning of Section 7 of the NLRA. [Pl.'s Br. at 8–10.] Recall that Section 7 of the NLRA requires that employee action is only protected if it was "concerted … for the purpose of collective bargaining or other mutual aid or protection" and that Section 8(a)(1) makes it an unfair labor practice "to interfere with, restrain, or coerce employees in the exercise of" Section 7 protected activity. *See* 28 U.S.C. §§ 157, 158(a)(1). And so, Plaintiff argues, Defendants' actions were not arguably prohibited, nor his own actions arguably protected, because he never engaged in concerted activity necessary to sustain an unfair labor practices charge. [Docket No. 25 ("Pl.'s Supp. Br.") (citing *Meyers Indus., Inc.*, 268 N.L.R.B. 493, 493 (1984) ("Once the activity is found to be concerted, an 8(a)(1) violation will be found if, in addition, the employer knew of the concerted nature of the employee's activity, the concerted activity was protected by the Act, and the adverse

22

employment action at issue (e.g., discharge) was motivated by the employee's protected concerted activity.")).

The Court disagrees. *First*, the Court finds that Plaintiff's activity, as alleged, was indeed concerted, and therefore, qualifies as arguably protected under Section 7 of the NLRA. The Board has broadly interpreted "concerted activity" "to cover not only the union and pre-union efforts of groups of employees seeking to protect their rights but also certain actions undertaken by individuals in the unionized and non-unionized workplace." *MCPC, Inc. v. NLRB*, 813 F.3d 475, 483 (3d Cir. 2016) (citations omitted). Individual conduct can be "concerted" "both where individual employees seek to initiate or to induce or to prepare for group action and where individual employees bring truly group complaints to the attention of management." *Id.* (cleaned up).

Plaintiff privately disclosing the standard rate of pay to his colleague, [*see* Compl. ¶¶ 14–15], was not likely, by itself, concerted activity. *See Mushroom Transportation Co. v. NLRB*, 330 F.2d 683 (3d Cir. 1964) (holding that employee who privately dispensed advice to employees "without involving fellow workers or union representation to protect or improve his own status or working position" did not qualify as concerted activity). In that initial conversation, he was simply answering his colleague's question. But when Defendant Shott called the all-hands meeting to warn the chefs that discussing pay in the workplace was a terminable offense, Plaintiff alleges that he spoke up on behalf of both himself *and* his colleagues. As specifically alleged, Plaintiff used his "position of leadership among his coworkers" to challenge Shott's "generalized threat of retaliation" and demand that Shott take "responsib[ility] for disclosing the standard

23

pay rate to his coworker." [Compl. ¶ 19.] So, although Plaintiff's challenge was not necessarily undertaken with the imprimatur or prior coordination of the other chefs, it was, as alleged, not a purely "individual gripe[]." *Hugh H. Wilson Corp. v. NLRB*, 414 F.2d 1345, 1350 (3d Cir. 1969). As in *MCPC*, he appears to have "expresse[d] grievances to management about a matter of general employee interest in a group meeting context." 813 F.3d at 475; *NLRB v. Caval Tool Div.*, 262 F.3d 184, 190 (2d Cir. 2001) (affirming NLRB finding that employee engaged in concerted activity when he made statements about the company's new break policy at an employee meeting called by the employer to address the policy); *NLRB v. Talsol Corp.*, 155 F.3d 785, 797 (6th Cir. 1998) (holding that employee's comments about safety at a group meeting attended by employees and management constituted concerted activity and employee's statements were "[c]learly ... not purely personal gripes").

*Second*, and more importantly, even assuming that Plaintiff never engaged in concerted activity, it makes no difference to the *Garmon* analysis in this case. Whether Plaintiff engaged in concerted activity for the purposes of mutual aid or protection of his fellow chefs is relevant to determining whether his conduct was arguably protected under Section 7 of the NLRA. *See MCPC*, 813 F.3d at 482 (3d Cir. 2016) (explaining that in determining whether conduct is protected under the NLRA, court must address threshold question over whether conduct was concerted). But Section 7 notwithstanding, it is sufficient under *Garmon* that the employer's conduct was arguably *prohibited* under Section 8. *Garmon*, 359 U.S. at 245 (state law preempted where conduct is arguably protected *or* arguably prohibited). As discussed above, there is no doubt that

24

Defendants' conduct was arguably prohibited under Section 8(a)(1). [*Supra*, at 21–22.] And crucially—despite the parties' contentions, [*see* Pl.'s Supp. Br.; Docket No. 26 ("Defs. Supp. Br.")]—the Board's case law is clear that employer conduct can be arguably prohibited as an unfair labor practice under Section 8(a)(1) of the NLRA ***without the employee having engaged in any concerted activity at all***. *See Davis*, 476 U.S. at 395 (applicability of *Garmon* preemption depends on interpretation of the Act that has not been "authoritatively rejected" by the courts or the Board).

"It is beyond dispute that," as here, "an employer violates Section 8(a)(1) by threatening to terminate an employee in order to prevent [him] from exercising [his] Section 7 rights, for example, by discussing wages with coworkers." *See Parexel Int'l*, 356 N.L.R.B. 516, 519 (2011). That is because "enforcement of a rule against discussing wages effectively interferes with employee rights and violates Section 8(a)(1) ***even if no employee has yet engaged in protected activity*** and been disciplined under the rule." *Id.* at 518 (emphasis added). Logically, that makes sense. "If maintenance of such a rule violates the Act, *a fortiori*, the discharge of an employee to prevent [him] from engaging in such conduct violates [Section 8(a)(1)] of the Act," even without a specific finding of concerted activity. *Id.* So, "[i]f an employer acts to prevent concerted protected activity—to 'nip it in the bud'—that action interferes with and restrains the exercise of Section 7 rights and is unlawful without more." *Id.* at 519; *accord Central Hardware Co. v. NLRB*, 407 U.S. 539, 543 (1972) ("[O]rganization rights are not viable in a vacuum;

their effectiveness depends in some measure on the ability of employees to learn the advantages and disadvantages of organization from others[.]").

Here, even if Plaintiff never engaged in concerted activity for purposes of mutual aid or protection of his fellow chefs, Defendants' workplace rule and demand to refrain from discussing wages in the workplace chilled the exercise of the chefs' Section 7 rights. *Parexel Int'l*, 356 N.L.R.B. at 518 ("[W]age discussions among employees are considered to be at the core of Section 7 rights because wages, probably the most critical element in employment, are the grist on which concerted activity feeds.") (internal quotation marks and citation omitted); *Jeannette Corp. v. NLRB*, 532 F.2d 916, 919 (3d Cir. 1976) (similar). That workplace rule and Defendants' demand to obey it, if proven, is an unfair labor practice with or without concerted activity. It is enough to say, then, for purposes of *Garmon*, that Defendants' conduct was arguably prohibited as an unfair labor practice under Section 8(a)(1) of the NLRA.

Unless Plaintiff can establish that his CEPA and NJLAD claims fall within *Garmon*'s local interest exception, his claims must go before the NLRB.

### D.    The Local Interest Exception: Applied

To determine whether the local interest exception applies, the Court must determine whether adjudicating the CEPA and NJLAD claims in this case presents a risk of interference with the NLRB's primary jurisdiction. Because laws like CEPA and NJLAD regulate conduct arguably prohibited under Section 8 of the NLRA, there is a risk of interference with the NLRB's primary jurisdiction when "the controversy presented to the state court is identical with that which could be presented to the Board."

*Belknap*, 463 U.S. at 510 (citing *Sears*, 436 U.S. at 198). After determining the risk of interference, if any, the Court must determine whether the CEPA and NJLAD claims in this case "touch[] on [significant state] interests so deeply rooted in local feeling and responsibility" and balance those interests against the risk of interference with the NLRB's primary jurisdiction. *Garmon*, 359 U.S. at 243–44; *Belknap*, 463 U.S. at 491.

### 1. Plaintiff's CEPA Claim Presents a Risk of Interference with the NLRB's Primary Jurisdiction

The Court finds that Plaintiff's CEPA claim is identical to an unfair labor practices charge that he could have, but did not, file with the NLRB. Adjudicating the CEPA claim in state court thus presents a serious risk of interference with the NLRB's primary jurisdiction.

#### a. *Puglia v. Elk Pipeline and Preemption of State Whistleblower Claims*

This Court is not the first to have considered whether whistleblower claims under CEPA fit within *Garmon*'s local interest exception. In *Puglia v. Elk Pipeline, Inc.*, the New Jersey Supreme Court considered the same question and unanimously held that the NLRA did not preempt the plaintiff's CEPA claim because it fit within *Garmon*'s local interest exception.[6] *See* 141 A.3d 1187, 1190 (N.J. 2016).

---

[6]    Defendants press this Court to not follow *Puglia*, which they contend was wrongly decided. [Defs.' Reply Br. at 11.] Of course, *Puglia*, as a decision of the New Jersey Supreme Court, is not binding on this Court. A state court's interpretation of federal preemption law is not binding on the lower federal courts, even where the state court decided whether its own state laws were preempted by federal law. *See Robbins v. Fulton Bank, N.A.*, 2018 WL 1693386, at *3 (E.D. Pa. Apr. 6, 2018) (citing *Grantham v. Avondale*

The plaintiff in *Puglia* sued his employer under CEPA alleging that he was unlawfully terminated after he complained about his employer's failure to pay him in accord with New Jersey's Prevailing Wage Act. 141 A.3d at 1190. The New Jersey Supreme Court found that it was "beyond real dispute" that plaintiff's conduct was arguably protected and his employer's conduct arguably prohibited. *Id.* at 1207. But in applying the local interest exception—relying on a decision by the Washington Supreme Court, which similarly found its state whistleblower statute covered by the local interest exception, *see Hume v. Am. Disposal Co.*, 880 P.2d 988, 992–93 (Wash. 1994)—the *Puglia* Court held that the proofs between the plaintiff's CEPA claim and an unfair labor practices dispute under the NLRA were not sufficiently identical such that there was a risk of interference with the NLRB's primary jurisdiction. *Puglia*, 141 A.3d at 1208. The "[plaintiff's] CEPA claim," the New Jersey Supreme Court explained, "would center on whether he engaged in whistleblowing activity and whether that activity played a role in his termination." *Id.* "The NLRA claim," by contrast, "would instead focus on whether [the plaintiff] engaged in concerted activity aimed at the conditions of his employment." *Id.* And because, the court concluded, whether the plaintiff engaged in "concerted activity would play no role in a CEPA action," the CEPA claim would not be identical to the NLRA charge. *Id.*

The New Jersey Supreme Court found that even if there was a risk of interference, New Jersey's interest in protecting its citizens under CEPA was deeply-rooted and more

---

*Indus., Inc.*, 964 F.2d 471, 473 (5th Cir. 1992)). The Court can, however, consider *Puglia* as persuasive authority.

substantial than any risk of interference. *Id*. (finding the risk of interference "de minimis" balanced out against New Jersey's "deep" interest in enforcing CEPA). That was so, the court explained, because "CEPA does not affect the bargaining position between management and labor—the balance that the NLRA seeks to bring into equipoise" and because "CEPA claims are individual claims, seeking to validate an individual's right to be free from workplace retaliation after raising a legitimate public policy issue." *Id*. Moreover, the New Jersey Supreme Court expressed concerns that preempting CEPA claims in the face of allegations of a retaliatory discharge in response to workplace complaints would "leave employees with a half-baked remedy" given the remedial differences between CEPA and the NLRA. That is because, under the NLRA, the Board can only award equitable relief such as reinstatement and backpay. *See* 29 U.S.C. § 160(c). It cannot award compensatory damages for harms incurred as a result of an unlawful labor practice. *See NLRB v. Starbucks Corp.* 125 F.4th 78, 98 (3d Cir. 2024) (holding that NLRB exceeded its authority under NLRA by awarding, in effect, compensatory damages for "direct or foreseeable pecuniary harms incurred as a result of the unlawful adverse actions against [employees]" (internal quotation marks omitted)). CEPA, by contrast, authorizes a broader array of legal remedies—in addition to equitable remedies—including compensatory and punitive damages. N.J.S.A. 34:19-5; *Palladino ex rel. U.S. v. VNA of S. New Jersey, Inc.*, 68 F. Supp. 2d 455, 474 (D.N.J. 1999).

     Most courts, however, have declined to find that state whistleblower statutes, including CEPA, fall within *Garmon*'s local interest exception. *See Moreno*, 29 F.4th at

567 (applying *Garmon* to California whistleblower statute and finding that local interest exception did not apply); *Casumpang v. Hawaiian Comm. and Sugar Co.*, 712 Fed. App'x 709 (9th Cir. 2018) (applying *Garmon* preemption to safety claims under Hawaii Whistleblower Protection Act and finding that local interest exception did not apply); *Platt v. Jack Cooper Transp., Co.*, 959 F.2d 91, 96 (8th Cir. 1992) (applying *Garmon* to California whistleblower statute and finding that local interest exception did not apply); *Henry v. Laborers' Local 1191*, 848 N.W.2d 130, 145–46 (Mich. 2014) (applying *Garmon* to Michigan Whistleblowers' Protection Act and finding that local interest exception did not apply); *Smith v. Bewlay*, 2000 WL 306950, at *10 (D. Conn. 2000) (applying *Garmon* preemption to dismiss Connecticut state law wrongful discharge claim notwithstanding state interest that "employers may not retaliate against employees for lawful whistle-blowing activities"). Two courts in this District have reached the same conclusion specifically with respect to CEPA. *Shinn v. FedEx Freight, Inc.*, 2016 WL 7130911, at *3 (D.N.J. Dec. 7, 2016) (Hillman, J.) (holding that CEPA claim was preempted under *Garmon* and did not fall within the local interest exception because plaintiff's claims had already been considered and dismissed by NLRB); *Londono v. ABM Janitorial Servs.*, 2014 WL 7146993, at *3 (D.N.J. Dec. 12, 2014) (Salas, J.) (holding that CEPA claim was preempted under *Garmon* and did not fall within the local interest exception).

Most recently, as an illustration, the Ninth Circuit in *Moreno v. UltiQuest* held that the plaintiff's whistleblowing and unlawful termination and retaliation claims were

preempted under *Garmon* because although California had an interest in protecting its citizens from employers' illegal actions—terminating the plaintiff who advocated on behalf of his fellow employees for a promised ten percent raise—the controversies presented by the whistleblowing/wrongful termination claims were identical to a claim under the NLRA because "the facts as alleged in [the plaintiff's] complaint could [also] support a finding that [the defendant] violated the NLRA." 29 F.4th at 576.

> **b.    The Controversies Presented Between Plaintiff's CEPA Claim and an Unfair Labor Practices Charge Are Identical**

For the reasons that follow, the Court finds that the facts alleged by Plaintiff here could establish both a violation of CEPA and an unfair labor practices charge under Section 8(a)(1) of the NLRA. Thus, adjudicating the CEPA claim presents a risk of state interference with the NLRB's primary jurisdiction. *Puglia* is unpersuasive.

Section 34:19-3(c)(1) of CEPA provides, in relevant part, that:

> An employer shall not take any retaliatory action against an employee because the employee … [o]bjects to, or refuses to participate in any activity, policy or practice which the employee reasonably believes … is in violation of a law, or a rule or regulation promulgated pursuant to law[.]

So, to state a claim under CEPA, the plaintiff must show: that (1) he reasonably believed defendants were violating a law, rule, or public policy; (2) he performed a whistleblowing activity, including objecting to or refusing to participate in, the violation of the identified law, rule, or public policy; (3) an adverse employment action was taken against him; and (4) a causal relationship exists between the whistleblowing activity and the adverse employment action. *Puglia*, 141 A.3d at 1200.

31

Section 8(a)(1), of the NLRA makes it an "unfair labor practice for an employer [] to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in [Section 7]," including the right to "engage in [] concerted activities for the purpose of collective bargaining or other mutual aid or protection." 28 U.S.C. § 157; 28 U.S.C. § 158.

Plaintiff's allegations are critical to the identical controversies analysis. As alleged here, the proofs necessary to sustain a CEPA violation in this case cannot be disentangled from an NLRA unfair labor practices charge that Plaintiff could have, but did not, present before the Board. Under CEPA, Plaintiff would have to show that he was terminated for a "whistleblowing activity," here, objecting to or refusing to obey Defendants' demand to not discuss wages at work. N.J.S.A. 34:19-3(c)(1); [Compl. ¶ 35]. But if Plaintiff established that he was fired for objecting to or refusing to obey Defendants' demand to not discuss wages at work (as he alleges), that would *also* be sufficient to sustain an NLRA Section 8(a)(1) unfair labor practices charge before the NLRB. Under the Board's case law, a rule or provision—whether written or oral—which prohibits employees from discussing wages is unlawful under Section 8(a)(1)). *Victory II,* 363 NLRB at 1580; *Triana Industries*, 245 N.L.R.B. 1258 (1979) (finding unlawful under Section 8 (a)(1) employer's demand to new employees "not to go around asking the other employees how much they were making"); *Main St. Terrace Care Ctr.*, 218 F.3d at 538 (oral rules preventing employees from discussing wages are unlawful under Section 8(a)(1)). So, too, is firing an employee for objecting to such rules or provisions. *See NLRB v. Long Island Ass'n for AIDS Care, Inc.*, 870 F.3d 82 (2d Cir. 2017)

(affirming Board finding that employer violated Section 8(a)(1) by terminating employee for objecting to confidentiality agreement which prohibited employees from discussing wages). So, because the CEPA claim cannot be adjudicated without resolution of the merits of the unfair labor practices charge, the controversies are identical and there is a risk of interference with the Board's primary jurisdiction. *See Farmer*, 430 U.S. at 304.

Contrast the proofs here with those in *Sears* where the Supreme Court applied the local interest exception. Recall that in the state court action in *Sears*, the plaintiff-employer sued the defendant-union for trespassory picketing. To determine whether there was a trespass under California state law, the state court would have to determine only the location of the picketing. 436 U.S. at 198. But "[t]he unfair labor practice charge would have focused on whether the picketing had recognitional or work reassignment objectives, issues 'completely unrelated to the simple question whether a trespass had occurred.'" *Jones*, 460 U.S. at 682–83 (quoting *Sears*, 436 U.S. at 198). So, because determining the location of the picketing would not also establish an unfair labor practices charge before the NLRB, there would be no risk of interference with the Board's primary jurisdiction.

In this case, however, the state court would have to determine whether Plaintiff was terminated in retaliation for objecting to his employer's unlawful demand under both CEPA and Section 8 of the NLRA. And so, because "much of the conduct forming the basis of the state tort claims also underlies the potential unfair labor practice charge[], and the same facts would need to be determined in each proceeding," there is "a risk of conflicting rulings from the state court and the Board" which "threatens state

33

interference with the NLRB's enforcement of national labor relations policy." *Pennsylvania Nurses*, 90 F.3d at 804 (refusing to apply local interest exception because state law tort claims were identical to NLRA charge); *see also Moreno*, 29 F.4th at 576 ("[Plaintiff] alleges that [Defendant] terminated him for advocating on behalf of his fellow employees for a promised ten percent raise. Such conduct arguably violates the NLRA [and California law].").

As noted, the New Jersey Supreme Court in *Puglia* found the CEPA and NLRA claims sufficiently distinct because:

> Puglia's CEPA claim would center on whether he engaged in whistleblowing activity and whether that activity played a role in his termination. The NLRA claim would instead focus on whether Puglia engaged in concerted activity aimed at the conditions of his employment. Yet concerted activity would play no role in a CEPA action.

141 A.3d at 1208.

Here, the Court parts ways with the New Jersey Supreme Court. The additional element of concerted activity under the NLRA—at least in this case—does not render it meaningfully distinct from CEPA. There are two reasons why. *First*, and as described above, [*supra*, at 18–19], the proofs between the state law claim and the NLRA charge do not have to overlap with exacting precision. That is, CEPA does not need to have an element of concerted activity to be considered "identical" to an NLRA charge. If that were true, *any* difference between the state law cause of action and the NLRA charge would be enough to avoid *Garmon* preemption. *See Pennsylvania Nurses*, 90 F.3d at 805; *Moreno*, 29 F.4th at 576 ("Importantly, the *claims* need not be identical, but rather the focus is on whether the "controversy presented" is identical (emphasis supplied)

34

(internal quotation marks and citation omitted)). And the Supreme Court has rejected such a result, explaining that state law and NLRA controversies are still "identical" even where only "*a* fundamental "*part*" of the state law controversy is identical to the federal NLRA controversy. *See Jones*, 460 U.S. at 681–82 (emphasis added).[7] Because establishing that Plaintiff was fired for "whistleblowing activity" under CEPA—that is, objecting to a workplace policy restricting Section 7 rights to discuss wages in the workplace—would also be sufficient to establish an unfair labor practices claim under Section 8(a)(1), the controversies are identical.

*Second*, a finding of concerted activity is not always necessary to sustain an unfair labor practices charge under Section 8(a)(1) of the NLRA. And it is not necessary in this case. As described above, [*supra*, at 24–26], an employer can be held liable for an unfair labor practice *even where there is no concerted activity* on the part of the employee. In *Long Island Ass'n for AIDS Care*, for example, the Second Circuit affirmed a decision of the Board finding that the employer violated Section 8(a)(1) by terminating an employee for objecting to and refusing to sign a confidentiality agreement prohibiting the employee from discussing wages in the workplace. 870 F.3d at 88–89. The Board found that even

---

[7]    In *Jones*, Justice Rehnquist dissented from this reasoning, calling it a "reformulation" of the *Sears* requirement that the state and federal controversies must be "identical" in order for the local interest exception apply to arguably prohibited conduct. 460 U.S. at 688 (Rehnquist, J., dissenting). "Identical," he believed, "really mean[t] "identical." *Id.* at 689 n.5. "[T]wo items or concepts," he argued, "are not ordinarily thought to be identical merely because they share a common element, or, in the Court's words, because they are 'the same in a fundamental respect[.]'" *Id.* (quoting *Jones*, 460 U.S. at 682 (majority opinion)). While that argument has analytical force, it did not carry the day in *Jones*.

if the employee's objection and refusal was not concerted, his termination was still unlawful under Section 8(a)(1) because the confidentiality agreement was facially invalid. *Id.* at 86. The Second Circuit affirmed, explaining that "[a]n employer may not require even one individual employee to agree to abide by unlawful restrictions as a condition of employment" and "[t]hat the employees have not yet organized in order to protest the unlawful nature of the restriction at issue does not make it any less unlawful." *Id.* at 88–89. That is because an "unchallenged unlawful [workplace rule] can cause the chilling effect that Section 8(a)(1) seeks to prevent just as much as one that has been challenged by concerted action." *Id.* at 89. The Second Circuit found "no reason to judge the effect of an unlawful requirement on an employee's termination based solely on whether the employee acted in concert or alone." *Id.* Instead, it explained, the Board must "judge the effect of the requirement on an employee's termination based on the lawfulness or unlawfulness of the requirement." *Id.* In other words, terminating an employee for objecting to an unlawful workplace rule can be an unfair labor practice whether or not the employee's objection to that rule was concerted. *Parexel Int'l*, 356 N.L.R.B. at 519. ("[E]nforcement of a rule against discussing wages effectively interferes with employee rights and violates Section 8(a)(1) even if no employee has yet engaged in protected activity and been disciplined under the rule.").

That is what happened here. It would be an unfair labor practice under Section 8(a)(1) of the NLRA if, as alleged, Defendants fired Plaintiff for objecting to a demand forbidding him from discussing wages in the workplace, *regardless* of whether his objection to that practice was concerted for purposes of mutual aid or protection. So, at

least in this case, "concerted activity would play no role in [the] CEPA action," *Puglia*, 141 A.3d at 1208, but it would also play no role in proceedings before the Board.

### 2. *Plaintiff's NJLAD Claim Presents a Risk of Interference with the NLRB's Primary Jurisdiction*

Applying the same analytical framework as it did to the CEPA claim, the Court finds that Plaintiff's NJLAD's anti-wage discrimination claim under Section 10:5-12(r) is identical to an unfair labor practices charge that he could have filed with the NLRB. Thus, there is also a risk of interference with the Board's regulatory jurisdiction by proceeding with the NJLAD claim.

Section 10:5-12(r) of the NJLAD makes it unlawful:

> For any employer to take reprisals against any employee for requesting from, discussing with, or disclosing to, any other employee or former employee of the employer … regarding the … rate of compensation, including benefits, of the employee or any other employee or former employee of the employer[.][8]

Like NJLAD Section 10:5-12(r), Section 8(a)(1) of the NLRA also makes it unlawful to retaliate against employees for discussing wages. *See Wal-Mart Stores, Inc.*, 340 N.L.R.B. at 234 (employer violated Section 8(a)(1) by telling employees that they were not allowed to discuss wages and benefits and that they could be terminated for doing so).

---

[8] The New Jersey Legislature originally intended to enact Section 10:5-12(r) as an amendment to CEPA but, on Governor Christie's recommendation, instead enacted Section 10:5-12(r) as part of the NJLAD. Governor Chris Christie, *Recommendations for Reconsideration to Assembly Bill No. 2648* (First Reprint), available at https://pub.njleg.gov/bills/2012/A3000/2648_V1.PDF ("Because workplace discrimination claims in New Jersey are brought under LAD, this amendment of CEPA is inconsistent with the original intent of that law, and is more consistent with the underlying goals of LAD.").

Here, the identity in proofs between the NJLAD claim and the NLRA charge is even more apparent than it was in the CEPA context. Both statutes prohibit the exact same conduct—retaliatory termination of an employee for discussing wages in the workplace. In both a proceeding before the Board on the NLRA charge and in state court on the NJLAD claim, the proofs will be exactly the same. If, as alleged, Defendants terminated Plaintiff for discussing wages in the workplace, [*see* Compl. ¶¶ 28–29], it would violate both NJLAD Section 10:5-12(r) as well as Section 8(a)(1) of the NLRA. Thus, there is a risk of interference with the Board's regulatory jurisdiction if this action proceeds in state court.

### 3.    CEPA and NJLAD Are Not Statutes Deeply Rooted in Local Feeling and Responsibility

Even if the Court were to conclude that there was little risk of interference between the CEPA and NJLAD claims in this case, it finds that both statutes are not deeply-rooted in local feeling and responsibility. They are not the kind of state laws the *Garmon* court had in mind when it carved out the local interest exception for state interests "deeply rooted in local feeling and responsibility." *Garmon*, 359 U.S. at 244. What the Supreme Court had in mind and specifically considered were state laws regulating "conduct marked by violence and imminent threats to the public order." *Id*. at 247. "State jurisdiction has prevailed in these situations," the Court explained, "because the compelling state interest, in the scheme of our federalism, in the maintenance of domestic peace is not overridden in the absence of clearly expressed congressional direction." *Id*.

38

Indeed, since *Garmon*, the Supreme Court has only applied the local interest exception "in cases where the conduct alleged concerned activity traditionally recognized to be the subject of local regulation, most often involving threats to public order such as violence, threats of violence, intimidation and destruction of property" as well as cases involving trespass on private property and "certain personal torts, such as intentional infliction of emotional distress, and malicious libel." *Pennsylvania Nurses*, 90 F.3d at 803 (cleaned up); *see Sears*, 436 U.S. at 190–98 (trespass); *Farmer*, 430 U.S. at 304–05 (intentional infliction of emotional distress); *Linn v. United Plant Guard Workers of Am., Local 144*, 383 U.S. 53, 57–63 (1966) (malicious libel); *Int'l Union, United Auto., Aircraft & Agr. Implement Workers of Am. (UAW-CIO) v. Russell*, 356 U.S. 634, 640 (1958) (threats of violence); *Youngdahl v. Rainfair, Inc.*, 355 U.S. 131, 138 (1957) (threats of violence); *United Auto., Aircraft & Agr. Implement Workers of Am. v. Wisconsin Emp. Rels. Bd.*, 351 U.S. 266, 272 (1956) (violence and destruction of property); *United Const. Workers, Affiliated with United Mine Workers of Am. v. Laburnum Const. Corp.*, 347 U.S. 656, 668 (1954) (threats of violence). "[A] State still may exercise 'historic powers over [these] traditionally local matters [such as] as public safety and order and the use of streets and highways for 'policing of such conduct is left wholly to the states.'" *Lodge 76, Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. Wisconsin Emp. Rels. Comm'n*, 427 U.S. 132, 137 n.2 (1976) (cleaned up) (*first* quoting *Allen-Bradley Local v. Wisconsin Emp. Rel. Board*, 315 U.S. 740, 749 (1942), *then* quoting *International Union, U. Automobile Workers v. Wisconsin Emp. Rel. Board*, 336 U.S. 245, 253 (1949)). But the Supreme Court has not

extended the local interest exception "beyond [these] limited number of state interests that are at the core of the States' duties and traditional concerns." *See New York Tel. Co.*, 440 U.S. at 550 (Blackmun, J., concurring). The Court declines to so in this case.

No doubt, New Jersey has a genuine interest in protecting its citizens from unlawful employment practices under both CEPA and NJLAD Section 10:5-12(r). *See Moreno*, 29 F.4th at 576 (finding that local interest exception did not apply under *Sears* identical controversies analysis but acknowledging that California had a legitimate interest in protecting its citizens under whistleblowing and wrongful termination statutes). But so was the interest in *Wisconsin Dep't. of Industry v. Gould*, 475 U.S. at 282. In that case, the Supreme Court found that *Garmon* preempted a Wisconsin statute barring repeat labor law violators from selling their products to the state. *Id.* at 291. Wisconsin's interest in punishing repeat labor law violators may have been "laudable" but "it assume[d] for the State of Wisconsin a role Congress reserved exclusively for the Board." *Id.*

So, too, here. In this case, as alleged, the CEPA and NJLAD Section 10:5-12(r) claims are not regulating the kind of extreme conduct under generally applicable non-labor laws traditionally and historically committed to the States' police powers. Instead, they would be operating to "interfere with the 'interrelated federal scheme of law, remedy, and administration.'" *Gould*, 475 U.S. at 290 (quoting *Garmon*, 359 U.S. at 243)). Accordingly, the Court finds that the state laws in this case do not fit within the local interest exception. *See Andrewsikas v. Supreme Indus., Inc.*, 2021 WL 1090786, at *7 (D. Conn. Mar. 22, 2021) (state interest in the enforcement of employee whistleblowing

laws not sufficient to qualify for *Garmon*'s local interest exception); *See Leonard v. FedEx Freight, Inc.*, 2019 WL 4747812, at *3 (E.D. Cal. Sept. 30, 2019) (state interest in regulating "broad [] retaliation claims" cannot qualify for *Garmon*'s local interest exception); *see also Idaho Bldg. & Constr. Trades Council v. Inland Pac. Chptr. & Contrs.*, 801 F.3d 950, 966 (9th Cir. 2015) (local interest exception does not "extend to local interests in labor policy").

*     *     *

Having found that there would be both a risk of interference in adjudicating the state law claims and that those state laws, under the Supreme Court's cases, do not implicate the kinds of deeply-rooted local interests contemplated by *Garmon*, the Court determines that the risk of interference with the Board's primary jurisdiction outweighs any state interest in adjudicating the claims.[9] It does so with a few parting words.

---

[9]     In a different type of case—one, for example, where there is a deeply-rooted local interest of the kind discussed in *Garmon*, but where the controversies presented are identical—the Court might have more difficulty balancing the risk of interference against the state interest. Freeform balancing of this kind can be challenging given the incommensurable interests on each side of the balancing equation. Asking how much "risk of interference with the NLRB's primary jurisdiction" outweighs how much "state interest in protecting its citizens" is a bit like asking "whether a particular line is longer than a particular rock is heavy." *Bendix Autolite Corp. v. Midwesco Enterprises, Inc.*, 486 U.S. 888, 897 (1988) (Scalia, J., concurring). Nevertheless, applying the Supreme Court's cases faithfully means that the Court must undertake such an exercise in the appropriate case. *Belknap*, 463 U.S. at 499 ("[T]he state's interest in controlling or remedying the effects of the conduct [must be] balanced against [] the interference with the Board's ability to adjudicate controversies committed to it by the Act[.]").

First, the Court does not hold that all CEPA claims or all NJLAD Section 10:5-12(r) claims are preempted by *Garmon*. *Garmon*'s local interest exception requires a fact-sensitive application. *Platt*, 959 F.2d at 95. And so, the Court cabins its holding strictly to the facts presented in this case.

Second, the Court is mindful of *Garmon*'s black hole-like tendency to "reduce to the vanishing point States' power to redress wrongful acts in the labor field and provide any effective remedy under their own laws for tortious conduct." *Glacier Nw.*, 598 U.S. at 787 (Thomas, J. concurring) (quoting *Garmon*, 359 U.S. at 253–54 (Harlan, J., concurring) (cleaned up)). That is a serious concern, one shared by Justice Harlan who feared that *Garmon*'s broad rule of preemption would "cut[] deeply into the ability of States to furnish an effective remedy under their own laws for the redress of past nonviolent tortious conduct[.]" *Garmon*, 359 U.S. at 253 (Harlan, J., concurring). Forcing New Jersey workers to settle for—in the words of the New Jersey Supreme Court in *Puglia*—a "half-baked remedy" before the NLRB, 141 A.3d at 1209, an administrative body limited to awarding reinstatement and backpay, tends to undermine the broad remedial purposes of statutes like CEPA and NJLAD which allow a plaintiff to seek compensatory and punitive damages in court. *See Abbamont v. Piscataway Twp. Bd. of Educ.*, 650 A.2d 958 (N.J. 1994) (CEPA "promotes a strong public policy of the State" and "therefore should be construed liberally to effectuate its important social goal"); *Battaglia v. United Parcel Serv., Inc.*, 70 A.3d 602, 619 (N.J. 2013) (NJLAD is a "broad[,] remedial" statute and its "overarching goal is the eradication of the cancer of

discrimination."). But "a faithful application of *Garmon*" often leads to such a result. *See* Alexander S. Whistler, *Labor Law's Preemption Problem:* Glacier Northwest *and What the Fate of* Garmon *Means for American Workers*, 75 UC LAW J. 853, 869 (2024). It is both a feature and an irk of *Garmon*. *See* Henry H. Drummonds, *The Sister Sovereign States: Preemption and the Second Twentieth Century Revolution in the Law of the American Workplace*, 62 FORDHAM L. REV. 469, 567 (1993) (arguing that *Garmon* far exceeds the necessary preemptive inference that arises from the protections or prohibitions of federal labor laws). But unless and until the Supreme Court reexamines *Garmon* or Congress better defines the "boundary lines defining the realm of exclusive federal control" over labor relations, Cox, *Recent Developments in Federal Labor Law Preemption*, *supra*, at 277, *Garmon* will continue to operate with the type of sweep it does in this case. *See Sears*, 436 U.S. at 187 (noting that Congress left unexpressed in the NLRA the "permissible scope of state regulation of activity touching upon labor-management relations").

## VI.    CONCLUSION

For the reasons stated in this Opinion, the Motion to Dismiss will be **GRANTED**. Plaintiff's claims are preempted under *Garmon* and must go before the National Labor Relations Board. An appropriate Order will follow.

**February 20, 2025**                                   **s/Renée Marie Bumb**
Date                                                                    RENÉE MARIE BUMB
                                                                          Chief United States District Judge